VAN CORTLANDT and others *vs.* TOZER.

Under the act of 29th January, 1811, revised and amended in 1813, the *record,* or a
certified copy thereof, of any conveyance relating to lands *executed previous to 4th
July,* 1776, and recorded in the office of the clerk of *any of the counties of this state,*
whether the lands conveyed thereby, be situate in the county where the deed is
recorded or not, is *evidence* in the same manner as the original conveyance would
be, if produced and proved: so HELD in this case, where such deed was received
in support of a title and possession under it for 44 years.

The act of 16th February, 1771, declaring that a deed *duly acknowledged* and record-
ed, or the *transcript* thereof, shall be evidence, applies as well to *deeds proved*
by the subscribing witnesses and recorded, as to *deeds acknowledged* by the
grantor.

Previous to that act, any judge of a court of common pleas had authority to take the
acknowledgment or proof of a deed, although the land conveyed thereby was not
situate in the county of which he was an officer.

ERROR from the superior court of the city of New-York.
William R. Van Cortlandt and others, the heirs at law of Wil-
liam Ricketts Van Cortlandt, commenced an action of ejectment
against Charles Tozer, for the recovery of part of a house-lot in

the city of New-York. The property in question, was devised in 1754, by the grandfather of the plaintiffs, to his wife Mary, for life, with remainder in fee to his two sons, Philip Van Cortlandt and William Ricketts Van Cortlandt, as *tenants in common*. The testator died in 1756. In 1759, his widow married the Rev. Philip Hughes, and on the 8th April, 1770, she and her husband released her life estate in the premises to her son *Philip*. Mrs. Hughes died in 1789. William Ricketts Van Cortlandt married in 1765, and in 1783 became a *lunatic*, and continued in that state until his death in 1830 ; he left four children, three of whom are plaintiffs in this cause. On the part of the defendant was produced and read in evidence, a *certified copy* of the record of a deed from William Ricketts Van Cortlandt to his brother Philip, purporting to bear date 31st December, 1764, conveying the property in question, together with other property, to the grantee in fee. This deed purported to have been executed in the presence of two subscribing witnesses, and its execution to have been *proved* by one of the subscribing witnesses, before a judge of the court of common pleas of *Queens* county, on the 2d March, 1768, and to have been recorded in the clerk's office of that county on 20th July, 1771. The copy produced was certified by the clerk of the county of Queens in 1833 ; the counsel for the plaintiffs objected to its being read in evidence, but the objection was overruled. The defendant also proved, that in 1772, Philip Van Cortlandt mortgaged the premises in question to one Dennis Carlton, to secure the payment of the sum of £1200 ; that the mortgage was foreclosed, and under a decree in chancery, made in 1786, the premises were sold to one Jonathan Pearsy, who was shown to be in possession of the same in 1791, and under his title it has been held ever since. Philip Van Cortlandt occupied the premises in question during the revolutionary war ; he was a major in the British army, and at the close of the war went with his family to England. He never returned to this country, and has been dead several years. The jury, under the charge of the presiding judge, found a verdict for the defendant, on which judgment was entered. The plaintiffs

Van Cortlandt v. Tozer.

sued out a writ of error, removing the record into the supreme court, where the judgment was *affirmed.* See the opinion delivered in that court, 17 *Wendell,* 339, *et seq.* The plaintiffs then removed the record into this court, where the case was argued by

*S. D. Craig & G. Wood,* for the plaintiffs in error.

*D. Lord, jun. & G. Griffin,* for the defendant in error.

In support of the objection to the admission of the *transcript* of the deed in evidence, *the counsel for the plaintiffs* urged that there was no legal record of the deed ; that the acts of 1710 and 1771 in force *at its date* did not, nor did any usage of the then colony authorize it to be proved or recorded in the manner and form in which it appeared. They further insisted, that the first section of the act of 1811, was not intended to sanction and legalize it as a valid record, and make it legal evidence, because, 1. If the legislature had intended by that section to legalize unlawful records of deeds, they would have used clear and appropriate language to convey that intent, and to carry that provision into effect. 2. Inasmuch as such a provision would impair and affect the antecedent rights of others, the court ought not to *presume* that the legislature intended to introduce it, unless expressed in *plain words,* or by clear implication. 3. The language used does not convey such an intention, but refers manifestly to records *duly* and lawfully made. 4. The language used should be taken distributively *reddendo singula singulis,* and refers to records of deeds in the *respective counties,* agreeably to the common *mode of expression* in such cases, and to the usage of the legislature in *similar acts pari materia.* 5. There was no *inconvenience* arising from an antecedent usage to record deeds in counties in which the land did not lie, that could render it proper or expedient for the legislature to introduce such a provision. 6. The act of recording deeds in counties where the lands *did not lie,* would be inconvenient and unreasonable, whether the object of recording be to furnish actual evidence or constructive notice of the con-

veyance, and would encourage and promote fraud, and therefore it is not to be presumed that the legislature intended to sanction it. 7. The object of the first section of the act, as the whole context shows, was to authorize the records of deeds made under the colonial government in private local offices to be evidence in the state courts, and to remove any doubt on that subject.

After advisement, the following opinion was delivered :

By the CHANCELLOR. The only material question in this cause is, whether the transcript of the deed of December, 1764, from the ancestor of the plaintiffs, to his brother Philip Van Cortlandt, under whom the defendant has derived his title to the premises in controversy, was legal evidence for the defendant upon the trial in the court below. This depends in some measure upon the construction of the first section of the act of January 18L1, concerning the record of certain ancient conveyances; which section was substantially the same as the sixth section of the general recording act of April, 1813. 1 R. L. of 1813, p. 371. Independent of this statutory provision, however, I am inclined to think this record would have been good secondary evidence of the deed of 1764, upon due proof that the original deed could not be found. The premises had been held in conformity with this deed for more than forty-five years before the trial, and subsequent to the death of the tenant for life, who died in 1789. If the original deed had been produced, it might therefore have been given in evidence, without any proof of the execution thereof by the grantor. It is also a well known historical fact, that the British refugees, who left this state at the close of the revolution, generally carried off their title deeds with them, to prevent the confiscation of the property under previous acts or judgments of attainder, or for the purpose of obtaining a remuneration from the British government for the loss of such property. The question does not, however, appear to have been raised upon the trial as to the admissibility of the record as secondary evidence, independent of the statute. Neither was the

Van Cortlandt *v.* Tozer.

best secondary evidence produced.  For the certified copy of the clerk was only the copy of a copy, which was not admissible as secondary evidence, where the original copy could have been produced, unless it was a case provided for by the statute.  The defendant's counsel are thrown back, therefore, upon their original position, as to the validity of the certified copy of the deed as evidence under the provision in the recording act of 1813.

It is supposed by the counsel for the plaintiffs in error that the only object of the first section of the act of 1811, and of the sixth section of the act of 1813, was to provide for the giving in evidence of an authenticated copy of the record of a deed or other conveyance, recorded in the county where the lands were situated, instead of producing the original record itself.  If that was the object of the statute, it is very difficult to conjecture why it was confined to ancient deeds only which were executed previous to July, 1776, instead of being extended to all conveyances executed either before or after that time, and also to deeds recorded in the secretary's office.  Upon examination, also, it is found that for any other object, than that of making the record or the transcript of a deed recorded in the *wrong* county previous to the revolution, legal evidence of the existence of such an ancient deed, these legislative provisions were entirely useless and uncalled for, under the laws then in force as to all deeds properly recorded previous to the revision of 1788.  By an express provision of the act of the 26th of February, 1788, 2 *Greenl. Laws*, 99, § 1, the record of every deed or conveyance theretofore executed, and duly acknowledged or proved, and recorded in the office of the secretary of state, or in the clerk's office of the county where the lands were situated, might be read in evidence in any court in this state without further or other proof of such deed or conveyance ; and the statute further declared, that either the record *or a transcript thereof*, might be given and received in evidence.  No further statutory provision, therefore, could have been necessary to render the transcript of the record of such a deed legal evidence, provided the deed had been recorded in the county where the lands were

situated. But there was a large class of cases to which the act of 1811 would apply as well as to the case under consideration ; for although it was not usual, subsequent to the act of October, 1710, to record deeds in counties where no part of the premises conveyed were situated, it very frequently happened that the deed embraced lands lying in several counties, and that such deeds were by mistake recorded in one of those counties only, instead of being recorded in all, or in the office of the secretary of state. Besides, the fact that so many original conveyances were lost by the events of the revolution, or were placed beyond the reach of those who had become entitled to lands under the same, by being carried out of the county by refugees, rendered it perfectly proper that the legislature should allow a species of secondary evidence in relation to such conveyances, which it might have been dangerous to have extended to those of a more recent date ; particularly to those which were recorded after the declaration of independence, when it was probable that many antedated deeds from attainted persons were put upon record in those counties which were in possession of the enemy, for the purpose of saving their lands from forfeiture. I have no doubt, therefore, that the deed in question was embraced by the acts of 1811 and of 1813, provided it had been duly acknowledged or proved, according to the common law of the province as it existed previous to the act of the 16th of February, 1771. 2 *Van Schaack's Laws of N. Y.* 611. That question I will now proceed to consider.

The act of 1771 does not profess to declare that none but a judge of the court of common pleas where the land lay could take the acknowledgment or proof of a deed before that time, with a view to its being recorded, nor to declare invalid any conveyance theretofore executed and proved or acknowledged. Its object was to confirm certain conveyances by *femes covert* theretofore made, and regulate and restrict the mode of conveyances by *femes covert*, and the recording of all deeds and conveyances thereafter to be executed. But the preamble of that act is important in showing what the ancient practice in the

colony up to that time had been, as to the proof or acknowledg-
ment of deeds to entitle them to be recorded.  As I understand
the case of *Doe* v. *Roe,* 1 *Johns. Cas.* 402, cited by the plaintiff's
counsel, the record of the deed, offered in evidence in that case,
was not rejected on the ground that a deed could not be recorded
on proof of its execution by a *subscribing witness* thereto ; but
on the ground that the scrivener who proved the execution of the
deed was not one of the subscribing witnesses.   Although the
act of 1710 speaks only of deeds *duly acknowledged,* the recital
in the act of 1771 shows that the *practical construction* of the
former act had been to allow deeds to be recorded which had
been *duly proved* by a subscribing witness, as well as those which
had been actually acknowledged by the grantor in person, before
the officer who allowed the same to be recorded.   What was the
origin of this custom, which by the usages of a century, at length
became a part of the common law of the province of New-York,
does not distinctly appear, and cannot now be known.   That
such a custom existed, at a very early day in the colony, is evi-
dent from the records of Dutch transports, or conveyances, still
in existence.   The custom of executing or acknowledging the
transport in the presence of a magistrate was probably brought
by the early Dutch settlers from Holland, where, under the pro-
clamation of Charles V. as count of Holland and of Flanders,
issued in 1519, it was necessary to the validity of a transport or
conveyance of immovable property, that it should be made
before the magistrate of the place ; and the custom of proving
the execution of the conveyance by a subscribing witness, where
it was inconvenient for the grantor to go before the magistrate
to acknowledge it personally, was probably derived from the
common law of England in relation to enrolments of deeds,
which allowed of such proof by a subscribing witness, as a sub-
stitute for a personal acknowledgment.   *Winscomb* v. *Dunches,*
*Godbolt's R.* 270.   But whatever may have been the origin of
the custom, such was the settled law of the colony at the time
the conveyance in question was executed, and the time it was.
proved by one of the subscribing witnesses, before a judge of

Queens county. The statute of 1771 also recites the fact that it had been the custom to record such conveyances, upon proof or acknowledgment of the due execution thereof before a judge of a county court, as well as before a judge of the supreme court, or a master in chancery, or a member of the council; and there is nothing to show that the acknowledgment or proof was *confined* to a judge of the county where the lands were situated, previously to the act of 1771. I infer, therefore, that it was not so restricted previous to that time; and that the deed in question was duly proved according to law, so as to entitle a transcript of the record thereof to be read in evidence under the sixth section of the act of 1813, although such deed was recorded in the wrong county.

For these reasons I think the judgment of the courts below should be affirmed.

On the question being put, *Shall this judgment be reversed ?* the court *unanimously* decided in the *negative.* Whereupon the judgment of the supreme court was AFFIRMED.